CRAIN, Judge.
In this medical malpractice case, plaintiff, Don W. Turner, appeals from the judgment of the trial court in favor of defendant, Robert G. Peden, M.D. The issue on appeal is whether Turner proved that Dr. Peden deviated from the accepted standard of care when he prescribed an antibiotic eardrop solution which allegedly caused Turner to lose all hearing in his right ear. The facts are essentially undisputed.
FACTS
In January 1978, Don Turner, a pipe welder, accidently punctured his right eardrum with a welding rod. He was taken to an emergency room in Baton Rouge where he was treated for nausea and referred to Dr. Peden, a specialist in otolaryngology (an Ear, Nose and Throat doctor). Dr. Peden examined Turner’s perforated eardrum, and after noting some swelling and redness, removed several small particles of metal flux that had lodged in Turner’s middle ear.
Dr. Peden prescribed two types of antibiotics, one was vibramycin, an oral antibiotic. The other was Cortisporin Otic Suspension, a topical liquid antibiotic eardrop to be applied directly into the ear every six (6) hours.
Turner applied the drops twice that day and three times the next day. On the sixth application, Turner had a severe, adverse reaction to the drops. He experienced an extreme burning sensation throughout his entire body, accompanied by dizziness, nausea, and vertigo which prevented him from walking, standing or sitting up. After consulting a different physician, Turner discontinued the use of the ear drops. He was given various medications to help control the burning, dizziness, and nausea, all of which gradually cleared up. By March of 1978, although Turner’s eardrum had healed, he had permanently lost all hearing in his right ear. The loss of his auditory nerve has resulted in equilibrium problems that he has learned to cope with but which limit his physical abilities.
Turner sued Dr. Peden for malpractice, alleging that he improperly prescribed the eardrops which caused the hearing loss and equilibrium problems. After trial, the judge ruled that Turner failed to prove that Dr. Peden’s actions deviated from the accepted standard of care.
STANDARD OF CARE
In a medical malpractice action against a specialist, La.R.S. 9:2794 requires the plaintiff to prove the degree of care ordinarily practiced by physicians in the specialty, and that the physician “failed to use reasonable care and diligence, along with his best judgment in the application of that skill.” Additionally, the plaintiff must show that defendant’s failure to exercise the required degree of care proximately resulted in injury to the plaintiff.
The Cortisporin Otic medication that Dr. Peden prescribed is composed of three different antibiotic agents. One of these, neo-mycin sulfate, is commonly known to be extremely toxic to the nerves found in the inner ear. If neomycin is taken orally or by injection, some degree of hearing loss is almost assured. However, neomycin is also highly effective against certain types of bacteria, and it is commonly used as a topical agent. The eardrops in question are primarily marketed for use in preventing infection in the external or outer ear canal. In such cases the eardrum is ordinarily intact and will prevent the drops from entering the middle and inner ear.
Plaintiff contends that Dr. Peden was negligent in prescribing eardrops containing neomycin knowing that the eardrum had been punctured. Plaintiff asserts that the solution passed through the perforated eardrum, into the middle ear, and then somehow entered the inner ear, destroying his auditory nerves.
*517 The information pamphlet provided with the Cortisporin Otic solution specifically warns that the drug should be used with care when the integrity of the eardrum is in question due to the possibility of ototox-icity caused by neomycin. Dr. Peden testified that he was well aware of the potential ototoxic effects of neomycin. However, he further testified that it was his intention that the drops penetrate in the middle ear. The record discloses that neomycin ear-drops are routinely prescribed for treatment of potential and actual infections of the middle ear. Ordinarily, the introduction of neomycin into the middle ear is not harmful, apparently because having reached the middle ear, the drops do no damage unless somehow they are absorbed directly through the intact round window membrane that separates the middle and inner ear. One doctor described this as only a “theoretical” possibility, stating that probably “billions of doses of cortisporin have been used in people with perforations of the eardrum.”
From the record it appears that many members of the medical profession believe that the benefits of using neomycin to prevent a potentially severe or even fatal infection developing in the middle ear far outweigh the risks of neomycin entering the inner ear from the middle ear.[1] In fact, cotton balls are commonly soaked in Cortis-porin and used as a pack after surgery in the middle ear to prevent infection. Plaintiff contends the treatment here was inappropriate as no visible infection existed. However, the middle ear had been contaminated by dirty metal particles. Consequently, the trial court found that Dr. Pe-den exercised appropriate medical skills in prescribing Cortisporin to treat a possible infection.
Although plaintiff presented evidence that there might have been other, potentially safer, alternative treatments — there are different types of ear drops available which do not contain neomycin; there was testimony that these alternative methods of treatment are not considered as effective against infection. Nevertheless, regardless of possible alternatives, plaintiff did not prove by a preponderance of the evidence that the treatment performed was below the accepted standard of practice.
Whether Dr. Peden fell below the standard of care required and whether plaintiff proved such a failure is a question of fact. See Malbrough v. Hamsa, 463 So.2d 639 (La.App. 5th Cir.1984), writs denied, 466 So.2d 472, 474 (La.1985). The trial court found that from the evidence presented, the accepted standard of care required in the instant situation was as was performed by Dr. Peden. We have thoroughly reviewed the record and find that the trial court’s findings are reasonably supported by the evidence and not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The fact that the plaintiff suffered a regrettable injury, caused by a rare side effect of a commonplace medical treatment does not establish malpractice.
DECREE
Accordingly, for the above and foregoing reasons, the judgment of the lower court is affirmed. Plaintiff-appellant is cast for all costs.
AFFIRMED.

. Left untreated, a middle ear. infection can result in hearing loss, meningitis, brain abscess and death.